UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MAINE

| | |
|---|---|
| NORTHEAST PATIENTS GROUP et al., <br><br> Plaintiffs, <br><br> v. <br><br> MAINE DEPARTMENT OF ADMINISTRATIVE AND FINANCIAL SERVICES et al., <br><br> Defendants. | CIVIL ACTION NO. 1:20-cv-00468-NT |

**PLAINTIFFS' BRIEF IN SUPPORT OF JUDGMENT ON THE RECORD**

Northeast Patients Group d/b/a Wellness Connection of Maine ("Wellness Connection") and High Street Capital Partners, LLC ("High Street") are challenging the residency requirement for dispensaries in Maine's Medical Use of Marijuana Act. Because this law facially discriminates against non-residents by excluding them from owning a dispensary in Maine's medical marijuana program, it violates the dormant Commerce Clause of the United States Constitution. The Court should therefore enter judgment on the record.[1]

BACKGROUND

This is the third lawsuit in a year challenging marijuana laws in Maine that discriminate against residents of other states. First, Wellness Connection's sister

---

[1] On February 9, 2021, the parties had a conference call with the Court and it was agreed that this case should proceed on a stipulated record with the parties each submitting briefs. *See* Procedural Order (Feb. 9, 2021); *see also, e.g.*, *Thompson v. Cloud*, 764 F.3d 82, 90 (1st Cir. 2014) (reviewing a judgment of the District Court for the District of Maine which "was entered pursuant to a joint motion requesting a decision on a stipulated record").

company NPG, LLC sued the Department over the residency requirement in Maine's adult use marijuana statute. The Department responded by deciding to no longer enforce that unconstitutional residency requirement. *See NPG, LLC v. Dep't of Adm. & Fin. Servs.*, Civil Action No. 1:20-cv-00107, Doc. 9 (D. Me. May 11, 2020). Next, NPG, LLC sued the City of Portland over its ordinance that gave preference to Maine residents when awarding retail marijuana licenses. This Court enjoined the City from using the residency-related criteria in the ordinance because "the dormant Commerce Clause likely restricts the City's licensing of marijuana retail stores" in a manner that favors Maine residents, and "the City is unlikely to succeed in justifying the residency preferences in its points matrix." *NPG, LLC v. City of Portland*, 2020 WL 4741913, at *23-24 (D. Me. Aug. 14, 2020). Wellness Connection and High Street now challenge the residency requirement for dispensaries in Maine's Medical Use of Marijuana Act because this law forces Wellness Connection (which owns and operates three dispensaries in Maine) to be entirely owned and controlled by Maine residents, and prevents High Street (which is entirely owned by non-Mainers) from owning any portion of Wellness Connection. *See* Joint Stipulation of Facts, ¶¶ 1, 2 & 6 (Mar. 11, 2021).

There's good cause for all of the recent action in Maine's marijuana industry. Legal marijuana markets are taking off in Maine and nationwide. Marijuana is legal for adult use in 15 states and for medical use in 36 states.[2] Last November, four more states voted by referendum to legalize adult use sales, and another state voted to create a medical cannabis program. *Id*. The federal government has not stood in the way of

---

[2] *See* Jeremy Berke & Shayanne Gal, *All the States where Marijuana is Legal – and 5 More that Just Voted for it*, Business Insider (Nov. 6, 2020).

legalization at the state level but instead has let marijuana sellers that comply with state law go about their business. *See Memorandum for all United States Attorneys: Guidance Regarding Federal Marijuana Enforcement*, Office of the Deputy Attorney General (Aug. 29 2013).[3]

Maine's medical marijuana industry is booming, with medical marijuana sales totaling $221 million from January through October last year.[4] According to the Portland Press Herald, medical marijuana is now Maine's most valuable crop.[5] Maine's medical marijuana industry is comprised of two types of businesses, caregivers and registered dispensaries. Caregivers are individuals who can cultivate limited quantities of medical marijuana for the purpose of providing or selling it to qualifying patients. *See* 22 M.R.S. §2423-A(2). There are more than 3,000 caregivers in Maine,[6] and they are responsible for around 76 percent of retail sales in the state.[7] Dispensaries, on the other hand, are companies that are registered with the State and authorized to, *inter alia*, cultivate, manufacture and sell medical marijuana to qualifying patients and caregivers

---

[3] This federal policy is expressed in a document known as the Cole Memorandum. The Cole Memorandum, issued during the Obama administration, was purportedly "rescinded" by Attorney General Sessions, *see Memorandum for all United States Attorneys: Marijuana Enforcement*, Office of the Attorney General (Jan. 4, 2018), but his successor, Attorney General Barr, told Congress that the Justice Department is "operating under my general guidance that I'm accepting the Cole Memorandum for now." *Review of the FY2020 Budget Request for DOJ*, 116th Cong. (Apr. 10, 2019) (testimony of William Barr, Att'y Gen. of the United States). The Biden administration has said nothing to the contrary.

[4] *See* Penny Overton, *Marijuana Has Grown to Become Maine's Most Valuable Crop*, PORTLAND PRESS HERALD (Dec. 8, 2020).

[5] *Id.*

[6] As of February 28, 2021, there were 3,058 registered caregivers in Maine according to Maine's Office of Marijuana Policy. *See Medical Marijuana Program At-A-Glance*, available online at https://www.maine.gov/dafs/omp/open-data/medical-use

[7] *See* Penelope Overton, *State's Medical Marijuana Market Much Bigger than Anyone Realized*, PORTLAND PRESS HERALD (Feb. 24, 2020).

through operations that are, by statutory design, much larger than caregiver operations. *See* 22 M.R.S. § 2428. There are only seven dispensaries operating in Maine, and combined they account for 24 percent of total retail sales according to the most recent publicly available data.[8]

Wellness Connection operates three of the seven registered dispensaries in the State. *See* Joint Stipulation of Facts, ¶ 2. Because of the residency requirement for dispensaries, Wellness Connection is wholly owned by three Maine residents. *Id.* ¶ 5. High Street would purchase the equity in Wellness Connection if the residency requirement, and the Department's implementing regulations,[9] did not prohibit it from doing so. *Id.* ¶ 6.

## ARGUMENT

The Maine Medical Use of Marijuana Act contains a residency requirement for dispensaries that explicitly privileges Maine residents over residents of other states. The statute provides that "all officers and directors of a dispensary must be residents of this

---

[8] *Id*. When the State last released economic data from the medical marijuana industry, there were eight registered dispensaries operating in the State. Wellness Connection has since converted one of its four dispensaries to an adult use marijuana retail store. As a result, there are now seven dispensaries operating in Maine.

[9] The current rules governing Maine's Medical Use of Marijuana Program are included as Exhibit A to the Stipulation of Facts. These rules only address residency requirements for "employees, principal officers and board members of a registered dispensary," and do not address residency requirements for owners of a dispensary. *See* Ex. A at 23. This is because the rules are outdated. When they were created, Maine law required dispensaries to be operated as mutual benefit non-profit corporations without any equity ownership. *See* Joint Stipulation of Facts, ¶ 4. In 2020, the law changed to allow dispensaries to become for-profit companies with equity owners (*id.* ¶ 4), and the residency requirement in the statute changed to encompass equity owners. The Department has proposed new rules to govern Maine's medical marijuana program that are currently going through formal rulemaking, and these rules, as drafted, are consistent with the statute in that they require dispensaries to be wholly owned by Maine residents. *See* Proposed Rules (available online at https://www.maine.gov/dafs/omp/medical-use/rules-statutes/rulemaking/proposed-rules).

State." 22 M.R.S. § 2428(6)(H). "Officers and directors" is broadly defined in the Act to include anyone owning any portion of a dispensary:

> **6-B. Officer or director.** "Officer or director" means, when used with respect to any nonprofit, for-profit or other organization governed by this chapter, a director, manager, shareholder, board member, partner or other person holding a management position or ownership interest in the organization." 22 M.R.S. § 2422(6-B).

A "resident of the state" is defined as "a person who is domiciled in the State." 22 M.R.S. § 2422(13-B).

Maine's residency requirement for medical marijuana dispensaries is unconstitutional because it explicitly favors Maine residents and discriminates against non-residents. That conclusion is clear from two centuries of Supreme Court jurisprudence dealing with the dormant Commerce Clause, culminating in *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449 (2019).

In *Tennessee Wine* the United States Supreme Court struck down a Tennessee law requiring that applicants for a license to operate a liquor store have resided in the state for the prior two years. *Id.* at 2457. The Court declared that Tennessee's two-year residency requirement "plainly favors Tennesseans over nonresidents," *id.* at 2462, and that its "predominant effect" is "simply to protect" Tennesseans "from out-of-state competition." *Id.* at 2476. This violated the dormant Commerce Clause, the "primary safeguard against state protectionism." *Id.* at 2461. The opinion went on to reject the argument that the dormant Commerce Clause applies differently to alcohol than to other commodities. *Id.*

The decision in *Tennessee Wine* has ample precedential support. The Commerce Clause addresses the problem that existed "[d]uring the first years of our history as an independent confederation," when "the National Government lacked the power to

5

regulate commerce among the States." *Camps Newfound/Owatonna v. Town of Harrison*, 520 U.S. 564, 571 (1997). "Because each State was free to adopt measures fostering its own local interests without regard to possible prejudice to nonresidents, . . . a conflict of commercial regulations, destructive to the harmony of the States ensued." *Id.* (quotation marks omitted). To solve this problem, the Commerce Clause "not only granted Congress express authority to override restrictive and conflicting commercial regulations adopted by the States, but . . . it also . . . effected a curtailment of state power." *Id.* (citing with approval Justice Johnson's observation in *Gibbons v. Ogden*, 9 Wheat. 1 (1824) (opinion concurring in judgment), that "[i]f there was any one object riding over every other in the adoption of the constitution, it was to keep the commercial intercourse among the States free from all invidious and partial restraints"); *Hughes v. Oklahoma*, 441 U.S. 322, 325 (1979) (the Commerce Clause reflects "a central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation").

Given the history and purpose of this constitutional doctrine, it makes sense that "[p]rotectionism . . . is forbidden under the dormant Commerce Clause." *Camps Newfound,* 520 U.S. at 588. If a law discriminates against non-residents on its face, it is likely invalid, because "the evil of protectionism can reside in legislative means as well as legislative ends." *Hughes*, 441 U.S. at 337. "At a minimum such facial discrimination invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives." *Id.*; *see also Camps Newfound,* 520 U.S. at

6

575 ("State laws discriminating against interstate commerce on their face are virtually per se invalid.") (quotation marks omitted).

There does exist "the possibility that a State may validate a statute that discriminates against interstate commerce by showing that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 278 (1988). But "the standards for such justification are high." *Id*. When a state law discriminates on its face against non-residents, as does the challenged Maine statute, it "is virtually per se invalid . . . and will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable non-discriminatory alternatives." *Dep't of Revenue v. Davis,* 553 U.S. 328 (2008) (citations and quotation marks omitted); *see also Tennessee Wine*, 139 S. Ct. at 2461–62 ("Under our dormant Commerce Clause cases, if a state law discriminates against out-of-state goods or nonresident economic actors, the law can be sustained only on a showing that it is narrowly tailored to advanc[e] a legitimate local purpose.") (quotation marks omitted). "The state bears the burden of showing legitimate local purposes and the lack of non-discriminatory alternatives, and discriminatory state laws rarely satisfy this exacting standard." *Family Winemakers of California v. Jenkins*, 592 F.3d 1, 9 (1st Cir. 2010). To meet this burden a state or municipality must present "'concrete record evidence,' and not 'sweeping assertion[s]' or 'mere speculation,' to substantiate its claims that the discriminatory aspects of its challenged policy are necessary to achieve its asserted objectives." *Id*. at 17 (quoting *Granholm v. Heald*, 544 U.S. 460, 492–93 (2005)).

Maine's residency requirement for dispensaries is unconstitutional because it "plainly favors" Mainers over non-residents. *Tennessee Wine*, 139 S. Ct at 2462. It is

7

identical in material respects to the residency requirement struck down in *Tennessee Wine*, as on its face it reserves the enormous economic opportunities of Maine's medical marijuana market for long-term residents. The result is that non-residents and out-of-state companies like High Street are excluded from owning a dispensary, the largest and most lucrative type of medical marijuana business, in Maine. Because the law facially discriminates against non-residents, it is "virtually per se invalid." *Camps Newfound,* 520 U.S. at 575. The self-evident purpose of the law, to benefit Mainers first and foremost, belies any other possible justification.  *See Or. Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 101 (1994) ("The State's burden of justification is so heavy that facial discrimination by itself may be a fatal defect.") (quotation marks omitted). As with the residency requirement struck down in *Tennessee Wine*, the challenged Maine statute is unconstitutional.

      Recent decisions in this Court support the conclusion that the residency requirement for dispensaries is unconstitutional. In May 2020, the Department decided not to enforce the durational residency requirement in Maine's adult use marijuana statute after Wellness Connection's sister company sued the State on the ground that the requirement violated the dormant Commerce Clause. The Department's decision was based on the determination that the residency requirement "is subject to significant constitutional challenges and is not likely to withstand such challenges." *NPG, LLC v. Dep't of Adm. & Fin. Servs.*, Civil Action No. 1:20-cv-00107, Doc. 9 (D. Me. May 11, 2020). The residency requirement for dispensaries is just as unconstitutional as the adult use residency requirement, and the Department's spot-on analysis in that case applies with equal force here.

Following the Department's decision not to enforce the adult use residency requirement, this Court issued a preliminary injunction preventing the City of Portland from using residency-related criteria when awarding its municipal cannabis licenses. The Court rejected the City's argument that "licensing of marijuana retail stores operates in a unique dimension" outside the bounds of the dormant Commerce Clause, and held that "the dormant Commerce Clause likely restricts the City's licensing of marijuana retail stores" in a manner that favors state residents. *See NPG, LLC v. City of Portland*, 2020 WL 4741913, at *9-10 (D. Me. Aug. 14, 2020). The Court explained that "although the Controlled Substances Act criminalizes marijuana, it does not affirmatively grant states the power to burden interstate commerce in a manner which would otherwise not be permissible." *Id.* at *10 (quotation marks omitted); *see also id.* at *10 n.15 ("Congress has simply not spoken on whether the states that have legalized recreational marijuana are allowed to enact laws that would violate the dormant Commerce Clause," and for such laws to be permitted under the Commerce Clause, "[s]pecific affirmative authorization is required."). All of this is consistent with the commonsense principle that the dormant Commerce Clause applies to state cannabis regulations just the same as it applies to any other type of state law.

## CONCLUSION

Because it violates the dormant Commerce Clause, the Court should permanently enjoin the Defendants from enforcing the residency requirement for dispensaries, 22 M.R.S. § 2428(6)(H), and all regulations implementing that requirement.

March 17, 2021

                                              /s/ Matthew Warner
                                        Matthew Warner, Maine Bar No. 4823
                                        Jonathan G. Mermin, Maine Bar No. 9313
                                        Alexandra Harriman, Maine Bar No. 6172

        Attorneys for Northeast Patients Group d/b/a Wellness Connection of Maine & High Street Capital Partners, LLC

        Preti Flaherty Beliveau & Pachios LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
207.791.3000
mwarner@preti.com
jmermin@preti.com
aharriman@preti.com

## CERTIFICATE OF SERVICE

    I hereby certify that on March 17, 2021, I filed the plaintiffs Brief in Support of Judgment on the Record using the CM/ECF system which will provide service to all counsel of record.

        /s/ Matthew Warner
Matthew Warner, Maine Bar No. 4823
Attorney for Northeast Patients Group d/b/a Wellness Connection of Maine & High Street Capital Partners, LLC